CHESHIRE.

JOSLIN & a. v. WHEELER, Adm'r, & a.

A bill in equity does not lie to recover a claim against the estate of a
deceased person, when the creditor has an ample remedy by ordinary pro-
ceedings in the settlement of the estate in the probate court.

If his remedy by litigation in the probate court is doubtful, the question
whether the bill can be maintained may be postponed, by a continuance
of the case, to await the result of such litigation.

BILL IN EQUITY, to enforce contribution under the following
contract of mutual indemnity: " Whereas, in doing the business
of the Hope Steam Mills Company it is convenient and advanta-
geous to all to use the notes and paper of said company with an
indorser, guarantor, or surety, and not convenient for all the mem-
bers of this corporation to put their names upon such notes or
papers, although all are equally interested therein; now, in consid-
eration of the above, it is mutually agreed between the under-
signed, interested in said corporation, that each shall be equally
liable and holden to each other for such paper, and to the person
or persons so becoming indorser, guarantor, or surety on such
notes or paper, so that, between the members of the corporation,
the signer of such notes or paper as above shall be so far indem-
nified that he shall only be holden for his just share. The above
agreement is to apply to such notes and papers as shall be
approved by not less than three of the directors of said company.
The above is in accordance with the original agreement between
the parties, and is to apply to what has already been done, as well
as to the future.

Keene June 20, 1874.

Geo. B. Twitchell.    Sam. B. Crossfield.    Fred A. Barker.
Wm. P. Wheeler.       L. W. Cummings.        George K. Wright.
E. Joslin.            J. Henry Elliot.       C. S. Faulkner."

Facts found by a referee. The plaintiffs, Joslin and Elliot, are
signers of the agreement, and the other plaintiffs represent the
estate of C. S. Faulkner, another signer. Five of the other signers
are defendants, and the administrator, widow, and heirs of Wheeler,
the other signer, are defendants. The nine signers were the
entire body of the stockholders, and equally interested in the cap-
ital stock of the company, which was $27,000. Under the agree-
ment, notes were indorsed by the three plaintiffs, who seek reim-
bursement for the defendants' shares of payments made by the
plaintiffs on some of those notes. The question is as to the liabil-
ity of the estate of Wm. P. Wheeler, who died May 10, 1876.

Francis A. Faulkner was appointed his executor May 19, 1876. The estate was then and is now solvent, but was settled in the insolvent course.   The executor died May 22, 1879, and his son, F. C. Faulkner, was appointed executor of his estate, William G. Wheeler being appointed administrator of his father's estate, Sept. 5, 1879.

The corporation was insolvent, and has continued so from the death of Wheeler to the present time.   At the death of Wheeler, its notes indorsed by the plaintiffs amounted to $66,500; other debts, amounting to $37,500, were secured by a mortgage, and other notes not indorsed or secured amounted to $1,233.37.   There were also book accounts due to and from the company.   Three of the defendant stockholders and signers were also insolvent.   Soon after F. A. Faulkner's appointment as executor, in 1876, the corporation appointed a committee to confer with him as to the affairs of the company; and from that time he attended the business meetings of the corporation, representing the Wheeler estate, and at these meetings he agreed, with the others interested in the corporation, that it was best not to wind up its affairs, but to renew the notes and carry along the indebtedness until a better sale of the property could be made.   In accordance with this understanding, the indorsed notes (with the exception of two, amounting to $5,000) were renewed at maturity by giving new notes similar to the old ones, the corporation paying the discount. The notes taken up by renewals were kept by the treasurer of the corporation until given to the plaintiffs for use in these proceedings.   This continuation of the business of the corporation was the part of good judgment, was carefully managed, and resulted in bettering the financial standing of the corporation and of those interested in it.

In the summer of 1876, F. A. Faulkner had informed the plaintiffs' agents that he had in his hands some $6,000 or $7,000 belonging to the Wheeler estate, which he intended to hold until this contingent liability was settled.   When F. A. Faulkner died, in 1879, and Wm. G. Wheeler became administrator, F. C. Faulkner gave notice that he would settle the account of his father as executor of the Wheeler estate.   He had then in his hands, belonging to the Wheeler estate, upwards of $6,000, retained by his father in distributing the estate.   The probate court, however, declined to allow F. C. Faulkner to settle his father's account, or to allow the distribution already made, because of this outstanding contingent liability; and Faulkner still has in his hands funds of the estate amounting to about $5,000.   A commissioner of insolvency, appointed upon Wheeler's estate, held sessions Aug. 15 and Nov. 15, 1876; and at one of these sessions the surviving signers of the agreement presented in writing their contingent claim against the estate, including a copy of the agreement and a schedule of all outstanding indorsed notes.   The commissioner's

report, which was accepted on the 3d Friday of January, 1880, stated that " no hearing was had upon the claim, but it is admitted that there is a contingent liability, upon the agreement of which said paper is a copy." No order to retain any funds, under Gen. Laws, *c.* 198, *s.* 6, to meet this liability, appears on the probate records, and no account by any one as executor or administrator of the estate has yet been settled.

In March, 1880, an effort was made to wind up the affairs of the corporation, and on Nov. 9, 1880, the property of the corporation was sold at auction for $50,000. This sum paid a portion of the company's debts; the plaintiffs at the same time paid indorsed notes amounting to $22,437.45, either in cash, or in paper of the date of Nov. 9, and since paid, each plaintiff receiving the indorsed note or notes paid by him. In April, 1881, the plaintiffs made a demand on Wheeler's administrator for his just share of what they had paid. This bill was filed September 10, 1881. It did not appear that, at the time of filing, Wheeler had in his hands as administrator any part of the estate. The above sum of $22,437.45, with interest since Nov. 9, 1880, is the amount which the Wheeler estate is asked to share with the other five solvent signers. The interest, up to Nov. 9, 1880, was paid by the corporation. The referee finds, so far as it is a question of fact, that the debts paid by the plaintiffs Nov. 9, 1880, were outstanding at the death of Wm. P. Wheeler in 1876. None of the defendants answered or appeared, except those interested in the Wheeler estate.

*Batchelder & Faulkner* and *W. H. Elliot*, for the plaintiffs. The claim having been reported by the commissioner as contingent, and the report having been accepted, it cannot be barred by the statute of limitations so long as the estate remains open and unsettled. *Quigg* v. *Kittredge*, 18 N. H. 137. The demand upon the executor and the filing of the claim in the probate court constitute all the preliminary steps necessary before bringing suit. The order to hold funds is only necessary upon settlement of the accounts. In any event, this suit comes within the provisions of G. L., *c.* 198, *s.* 22, and the court is warranted in taking jurisdiction thereunder.

*Frink & Batchelder*, for the defendants. I. It is difficult to see how this bill can be maintained.

1. It cannot be regarded as a suit against the heirs, because the estate is still unadministered, and there is no allegation or proof that assets are in their hands. G. L., *c.* 200, *s.* 14.

2. It cannot be regarded as a suit to enforce a claim allowed by the commissioner of insolvency, because it has never been examined or allowed by him, and because this is not the process known to the law to recover such a claim.

3. It cannot be regarded as a suit to recover a contingent claim

from the administrator of an insolvent estate, because no recovery of a contingent claim can be had against the administrator of an insolvent estate until the claim has been liquidated and allowed by the commissioner. *Judge of Probate* v. *Brooks*, 5 N. H. 82; *Ticknor* v. *Harris*, 14 N. H. 283.

4. It cannot be regarded as a suit to recover a contingent claim from the administrator of a solvent estate, because the estate has been declared insolvent. Moreover, the claim has not been filed in accordance with Gen. Laws, *c.* 198, *ss.* 5, 6, nor have assets been retained to pay it. The statute makes plain the duty to file such a claim, to give notice, and to ask for a retaining order. A suit brought after the statutory period, as this is, cannot succeed unless these preliminaries have been complied with.

II. The plaintiffs delayed taking steps to enforce their claim until two years after Wm. G. Wheeler was appointed administrator. This delay has impeded a settlement, and constitutes laches on the plaintiffs' part.

DOE. C. J.   " Demands against any estate not due, or depending on some contingency, may be filed in the court of probate, and the judge, after due notice, may require the administrator to retain in his hands, on settlement of his account, such sum as may be necessary to pay the same." G. L., *c.* 198, *s.* 6; Gen. St., *c.* 179, *s.* 6. "The commissioner shall examine and allow all just demands which the deceased owed that shall be exhibited to him, although such demands may not then be payable. . . . At the end of the time limited in the commission, the commissioner shall make his report to the probate office, and present a list of all the claims presented for allowance, and the amount allowed thereon." G. L., *c.* 199, *ss.* 7, 14.

The plaintiffs presented to the commissioner of Wheeler's estate their claim in writing, consisting of a copy of the agreement, and a schedule of the outstanding notes indorsed by them in pursuance of the agreement upon which a contingent liability was asserted. The commissioner reported that " no hearing was had upon the claim, but it is admitted that there is a contingent liability upon the agreement of which said paper is a copy:" and this report was accepted. As no account has been settled by the executor or administrator, it would seem that the time has not elapsed in which the judge of probate can require the administrator to retain a fund for the payment of the plaintiffs' demand. The commissioner's report does not state the amount that was due or would become due. But it does not appear that the amount was known, or could have been ascertained without a settlement of the company's affairs, or that there should have been such a settlement, or that there is any ground of laches on which the plaintiffs' claim can be defeated.

The referee finds that with the executor's approval the notes were renewed, and the company's business and indebtedness judi-

ciously remained unsettled, awaiting a more favorable opportunity to sell their property and wind up their affairs. The executor informed the plaintiffs' agent that he had in his hands $6,000 or $7,000, part of Wheeler's estate, which he intended to hold until the contingent liability was settled; and the executor's executor still holds about $5,000 of the fund retained for the payment of the plaintiffs' claim.

As the plaintiffs have not made it clear that they cannot recover contribution by proceedings in the settlement of Wheeler's estate in the probate court, they do not show themselves entitled to relief in this suit. The case is continued to give them a reasonable time for such proceedings. If it is found that they have not an ample remedy in the probate court, the question whether this bill can be maintained will be further considered.

<i>Continued.</i>

STANLEY and CARPENTER, JJ., did not sit: the others concurred.